# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | No. 1:16-CR-023-LY |
| ROBERT ALLEN HELMS (1) | § | |
| and | § | |
| JANNIECE S. KAELIN (2), | § | |
| | § | |
| Defendants | § | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully contends that no sentence below the advisory Guideline range of imprisonment is "sufficient … to comply with the purposes set forth in" Section 3553(a)(2) of Title 18.  18 U.S.C. § 3553(a).  The criminal fraud perpetrated by the defendants was egregious, encompassing multiple forms of deception over several years and inflicting on dozens of victims losses totaling millions upon millions of dollars.  A sentence below the advisory Guideline range of imprisonment therefore would not be sufficient "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  Neither would a sentence below the advisory Guideline range of imprisonment "afford adequate deterrence to criminal conduct" or "protect the public from further crimes of the defendant[s]."  18 U.S.C. § 3553(a)(2)(B) and (C).  The Defendants profited enormously from their crimes by spending more than $9 million of investor money on themselves and their family and friends during the relevant period.  Because of the benefits that the Defendants derived from their crimes, only a substantial term of imprisonment will be sufficient to deter them and others from engaging in similar criminal acts in the future.

## Section 3553(a)(2)(A) – Egregiousness of the Criminal Conduct

The "seriousness of the offense" in this case is evident from the sheer magnitude of the Defendants' criminal enterprise.  At the sentencing hearing, the government will present evidence, consistent with the unchallenged findings of the Probation Officer, that the Defendants obtained more than $30 million from more than 100 investors in Vendetta Royalty Partners ("VRP") and related ventures.  The evidence will show that the vast majority of investors lost money, and that the total losses exceeded $20 million.  As the Court will likely learn from victims' letters and statements at the sentencing hearing, the Defendants inflicted serious financial harm on individuals who had trusted the Defendants with their savings.[1]

The "seriousness of the offense" here is also evident from the elaborate and systematic character of the Defendants' fraudulent scheme.  Their fraud incorporated multiple forms and instances of deception, reflecting a deliberate and purposeful effort by the defendants to gain prospective investors' trust through deceit and outright lies.[2]  The Factual Basis for Guilty Plea that the Defendants executed (Helms [doc. 77], Kaelin [doc. 78]) catalogs the following examples of the Defendants' fraud and falsehoods:

- Falsely stating that Kaelin possessed pertinent business contacts and valuable proprietary software that she received from her former employer in the oil and gas business (Factual Basis at 4);

- Falsely stating that "no material … legal proceedings" were pending against the Defendants, when in fact they had been sued for fraud (*id.*);

---

[1] In his Sentencing Memorandum, Helms claims that his "legitimate business" is "still operating in the hands of a receiver and still generating income that is being paid out to investors."  (Helms Sent. Mem. [doc. 108] at 4.)  He further asserts that the Receiver, through the business, is "generating real returns for the investors."  (*Id.*)  As the Receiver will explain at the sentencing hearing, all but a handful of the investors have lost most of the principal that they invested, and the revenue collected by the Receiver will merely offset a small percentage of their losses.  The investors are not receiving "real returns" if one understands that term to mean profits or return on their investment.

[2] In his Sentencing Memorandum, Helms asserts that "there is no evidence that Mr. Helms set out to commit fraud or harm anyone."  (*Id.* at 4.)  That claim is at odds not only with Helms' acts but with his own statement that he "acted knowingly, willfully, and with intent to defraud."  (Factual Basis for Guilty Plea [doc. 77] at 1.)

- Falsely representing that they intended to use investor funds for legitimate business purposes when in fact they intended to use the funds to pay their personal expenses (*id.* at 5);

- Making *ponzi* payments (distributing recent investors' money to earlier investors to create the appearance of investment returns) (*id.*); and

- Effecting sham financial transactions to create the appearance of operating revenue, including a specific $2 million transaction in 2011 and 2012.  (*Id.*)

At the sentencing hearing, the government will also present evidence about the Defendants' falsification of a key business record, and their dissemination of that document to prospective VRP investors to mislead them about the value of the royalty and mineral interests that VRP held.  A predecessor to VRP, called Robro Royalty Partners, had enlisted a petroleum engineering firm to audit Robro's royalty and mineral assets.  Robro received an opinion letter stating that the assets were worth $18,221,000.  The Defendants later formed VRP with approximately half of Robro's assets, worth roughly $9 million.  In promoting the VRP investment, the Defendants showed prospective investors an altered and falsified copy of the opinion letter to Robro.  This letter appeared to be written to VRP, and it stated that VRP's assets were worth $26,189,000.  It was false and counterfeit, and not the result of any audit by the engineering firm.  Testimony at the sentencing hearing will describe how the counterfeit opinion letter apparently was created at the Defendants' office on Cameron Road in Austin.

After obtaining the investors' money through this elaborate subterfuge, the Defendants blatantly misused it for their own benefit.  For example, the government's evidence at the sentencing hearing will demonstrate that the Defendants spent more investor money on their personal expenses and those of their friends and relatives than they spent on the acquisition of revenue-producing mineral and royalty assets.  This conduct led to substantial financial losses to the investors who entrusted their hard-earned money to the Defendants.

These facts represent an elaborate and carefully considered scheme to defraud a large number of unsuspecting investors out of millions of dollars.  The Defendants carried out this fraudulent scheme over a protracted period of time, resulting in widespread and extensive financial harm to investors.  A substantial term of imprisonment is therefore necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  Nothing justifies a variance below the advisory Guideline range of imprisonment.

### Section 3553(a)(2)(B) and (C) – Necessity of Deterrence

A substantial term of imprisonment is also necessary to "afford adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant[s]."  18 U.S.C. § 3553(a)(2)(B) and (C).  For a sentence in a case of fraud to deter future similar crimes, the detrimental impact of the sentence on the offender must outweigh the benefits and profits that the offender enjoyed as a result the offense, particularly in view of the fact that discovery of a fraud is seldom, if ever, a foregone conclusion.

Here a substantial term of imprisonment is necessary because of the extensive personal benefits that the Defendants and persons close to them derived from the Defendants' crimes.  At the sentencing hearing, the government will present evidence about the personal expenses that the Defendants paid with investor funds during the relevant period, as well as cash payments that the Defendants and their friends and relatives received, totaling in all more than $9 million.  These financial benefits included more than $1.5 million in payments to the Defendants' friends and relatives; over $600,000 spent on purchasing, improving and maintaining residences; more than $450,000 for tuition, books, and other educational expenses; over $400,000 for weddings; over $500,000 for personal travel; and more than $300,000 for automotive expenses.

The unfortunate reality is that the Defendants and individuals close to them, because of the Defendants' crimes, enjoyed financial resources that most people will never experience. Unless they receive a substantial term of imprisonment in return for their crimes, the inescapable conclusion will be that crime sometimes does indeed pay.

### Section 3553(a)(1) – History and Characteristics of the Defendants

In determining the Defendants' sentence, the Court will also consider the Defendants' "history and characteristics," 18 U.S.C. § 3553(a)(1), and nothing about the history or characteristics of either of the Defendants excuses his or her conduct or mitigates his or her culpability.  For example, neither of the Defendants was unsophisticated or inexperienced. When the scheme began, both of the Defendants were in their 40s and had had careers, Kaelin in various forms of business and Helms as an attorney.  So neither the Defendants' history nor their characteristics diminished their ability to understand the wrongfulness of their action.  Moreover, their crimes apparently did not result from hardship such as financial distress.  The only apparent explanation for the Defendants' conduct is greed and a callous disregard for the rights and financial needs of the investors who trusted the Defendants with their money.

[BLANK SPACE]

## Conclusion

In view of the egregiousness of the Defendants' crimes, combined with the extensive personal profits and benefits that the Defendants enjoyed as a result of their offenses, the government respectfully contends that a sentence below the advisory Guideline range of imprisonment would be insufficient to satisfy the purposes of sentencing dictated by Congress in Section 3553(a) of Title 18 of the United States Code.

Respectfully submitted,

RICHARD L. DURBIN, JR.
United States Attorney


  /s Alan M. Buie
ALAN M. BUE
Assistant United States Attorney
Texas State Bar No. 783751
816 Congress Avenue, Suite 1000
Austin, Texas  78701
Office  (512) 916-5858
Fax     (512) 916-5854
alan.buie@usdoj.gov


## Certificate of Service

On September 7, 2017, I caused a true copy of the foregoing to be served on the Defendants' attorneys of record via the Court's Electronic Case File system.

  /s Alan M. Buie
ALAN M. BUE
Assistant United States Attorney